NOT FOR PUBLICATION                                              (Doc. No. 16)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                              :
LEOLA GOLEMBESKI                              :
                                              :
                        Plaintiff,            :          Civil No. 11-02784  (RBK/JS)
                                              :
            v.                                :          **OPINION**
                                              :
MOORESTOWN TOWNSHIP PUBLIC                    :
SCHOOLS & MOORESTOWN                          :
TOWNSHIP BOARD OF EDUCATION                   :
                                              :
                        Defendants.           :
_____      :

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of the Moorestown Township Board of Education ("Defendant") for summary judgment on the complaint of Leola Golembeski ("Plaintiff").  Plaintiff alleges that on the basis of her disability, Defendant failed to renew her contract, failed to accommodate her disability during her subsequent employment in another capacity, retaliated against her for complaining about the lack of accommodation, and did not hire her for another available position.  Plaintiff asserts claims against Defendant for allegedly violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1.  Defendant argues that Plaintiff has failed to establish a prima facie case for an ADA violation and that her NJLAD claim is barred by the applicable New Jersey statute of limitations.  While Plaintiff may proceed with her ADA-based claims, the statute of limitations has lapsed for the state law claims.  For these reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART.

# I.    BACKGROUND

Plaintiff began working for the Moorestown School District in 2004 as an Auditorially Impaired ("AI") Paraprofessional at the William Allen Middle School.  Plaintiff was expected to help assist the classroom teacher and work one-on-one with deaf and "hard of hearing" children who required more individualized attention.  Pl.'s Dep. at 33.  When interviewing for the position, Plaintiff was advised that she would be working primarily with one student.  Id. Although Plaintiff's contract explicitly stated that her employment terminated at the end of each school year, Plaintiff alleges that she did not have to re-apply for her position between the 2004/2005 school year and the 2005/2006 school year.  Id. at 42.  At the end of the 2005/2006 school year, Plaintiff was informed that she would transfer to the high school to continue working with the same student.  Id. at 59.

Shortly after transferring to the high school, Plaintiff was informed that the student would work with an interpreter instead of a one-on-one aide.  Pl. Dep. at 63.  Plaintiff then began working at the Roberts School with a new student who had Down syndrome and was also deaf. Id. at 64.  Plaintiff worked with this student for approximately one month before realizing that she was not equipped to handle the particular needs of the student and asked for a new assignment.  See Id. at 67-68.  Upon her request, Plaintiff was transferred to the Baker school, where she worked as an aide.  Id. at 69.  Finally, Plaintiff was transferred to "UES," where she remained as an aide in a "deaf classroom environment" until the end of the school year.  Id. at 68, 71-72.

At some point in the year, Plaintiff was informed that the school district wanted to change the infrastructure of the deaf classrooms.  Id. at 75.  Each classroom would have two aides—one of which would be deaf and the other hearing.  Id.  Because Plaintiff worked in a room with

2

another deaf aide, she was informed that the position was unavailable for the next school year and that she would have to reapply for the 2007/2008 school year.  Id. at 77, 84-85.  According to Plaintiff, however, at least one other classroom continued to have two non-deaf aides due to the classroom teacher's preference for hearing assistants.  Id. at 82.

During the summer of 2007, Plaintiff was notified that Defendant had not received a recommendation for her assignment as a paraprofessional and that there were no positions available for her.  Pl. Dep. at 85.  In an attempt to retain her benefits, Plaintiff decided to apply for any available position to remain employed with the school district.  Id. at 91.  Plaintiff interviewed for and ultimately accepted a position as a one-on-one aide to a handicapped student with cerebral palsy, receiving less pay than she had as an AI paraprofessional.  See Id. at 91-92, 100.  As Plaintiff was applying for other positions, she discovered that the school district continued to advertise two openings for AI paraprofessional positions.  Id. at 92-93.  Plaintiff e-mailed her former supervisor, Michael Lee, and asked why she had not been given one of the posted assignments if they were available.  Id. at 99.  Michael Lee explained that one opening was for the position at the Roberts School from which she had asked for a transfer and that the other position was for the UES classroom that she previously worked in.  Lee explained again that "we are using a model of pairing one hearing paraprofessional and one signing-model paraprofessional to work within the classroom.  This setting was not a good fit for you."  Pl. Opp'n, Ex. D.

After leaving the AI program, Plaintiff alleges that she was placed in a series of positions for which she was not qualified.  According to Plaintiff, the defendants failed to accommodate her disability and required her to perform inappropriate tasks such as answering the telephones in the school office.  See Pl.'s Dep. 116-120; 131-132.  In the summer of 2008, Plaintiff applied for

another position in the AI program but did not immediately receive an invitation to interview. Pl. Dep. at 134.  After inquiring about why she was not being interviewed for a position in the AI program in which she had worked for years, Plaintiff was extended the opportunity to interview but was not chosen for the position.  Id.  Although Defendant ultimately hired another person who was hearing impaired, Plaintiff argues that the person was latently deaf and could communicate as a hearing person due to their cochlear implant.  In contrast, Plaintiff is profoundly deaf and communicates primarily through American Sign Language.  Pl. Mot. at 5. Plaintiff did not receive a position with the school district for the 2008/2009 school year and sought other opportunities.

In the end, the pilot program was not adopted by the school.  According to Defendant, the decision not to adopt the new model "was a collaborative process to which no specific reason existed.  It was just decided that the new model was not the best way to provide service to the students."  Pl. Opp'n., Ex. F.

On the basis of these events, Plaintiff alleges disability discrimination.  Specifically, Plaintiff asserts that Defendant unlawfully discriminated against her when the Board of Education a) failed to renew her contract to work in the AI program and advertised her position at UES as available, b) failed to accommodate her disability in her placements during the 2007/2008 school year and retaliated against her for complaining, and c) did not offer her the AI position for the 2008/2009 school year.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine dispute as

to a material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the Court weighs the evidence presented by the parties, the Court is not to make credibility determinations regarding witness testimony. <u>Sunoco, Inc. v. MX Wholesale Fuel Corp.</u>, 565 F.Supp.2d 572, 575 (D.N.J.2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255.

However, to defeat a motion for summary judgment, the nonmoving party must present competent evidence that would be admissible at trial. <u>See</u> <u>Stelwagon Mfg. Co. v. Tarmac Roofing Sys.</u>, 63 F.3d 1267, 1275 n. 17 (3d Cir.1995). The nonmoving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions [or] conclusory allegations or suspicions" to establish the existence of a genuine issue of material fact. <u>Fireman's Ins. Co. of Newark, N.J. v. DuFresne</u>, 676 F.2d 965, 969 (3d Cir.1982) (citation omitted); <u>see</u> Fed.R.Civ.P. 56(e). "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' mandates the entry of summary judgment." <u>Watson v. Eastman Kodak Co.</u>, 235 F.3d 851, 857–58 (3d Cir.2000) (quoting <u>Celotex Corp.</u>, 477 U.S. at 322).

## III. DISCUSSION

Plaintiff's ADA claims appear to derive from three separate, but related, factual circumstances: 1) Defendant's failure to renew her contract following the 2006/2007 school year, 2) Defendant's failure to accommodate Plaintiff in her various positions during the 2007/2008 school year and Plaintiff's subsequent complaints,[1] and 3) Defendant's failure to hire Plaintiff as

---

[1] Defendant mentions only in passing that "Plaintiff's allegations that she was somehow the subject of discrimination as a result of being moved into the office fall short in that it was Plaintiff who initiated the transfer.

an AI aide for the 2008/2009 school year.  In opposition, Defendant challenges Plaintiff's ability to establish a prima facie case of discrimination under the ADA.  Defendant also asserts that Plaintiff's NJLAD claim is barred by the statute of limitations.  The Court will address Plaintiff's ADA-related claims separately and then turn to Plaintiff's state law claim.

    *1.   Failure to Renew Contract for 2007/2008 School Year*

Congress enacted the ADA in 1990 with the purpose of providing "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b).  The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees."  42 U.S.C. §12112(a).

To establish a prima facie case of discrimination under the ADA, a plaintiff must show that she (1) has a disability within the meaning of the statute, (2) is a "qualified individual," and (3) has suffered an adverse employment action because of that disability.  <u>Deane v. Pocono Medical Center</u>, 142 F.3d 138 (3d Cir. 1998).  A qualified individual is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8).

The Supreme Court's standard articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), provides the framework this Court uses to assess an ADA claim on a motion for

---

Plaintiff testified that she believed that she was there because Mr. Lee was trying to find a place for her."  Def.'s Mot. Summ. J. at 7.  It is unclear whether this argument is intended to counter Plaintiff's reasonable accommodation and retaliation claims.  If it is, Defendant has offered no legal support for such an argument.  Given the lack of clarity, the Court will decline to address the issue further in this Opinion.

summary judgment.[2] <u>Newman v. GHS Osteopathic, Inc.</u>, 60 F.3d 153, 157 (3d Cir.1995).  Under

that standard, Plaintiff must first establish a prima facie case of discrimination.  <u>McDonnell</u>

<u>Douglas</u>, 411 U.S. at 802. If she succeeds in establishing a prima facie case, the burden shifts to

Defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."

<u>Id.</u>  If Defendant meets their burden, Plaintiff must then prove by a preponderance of the

evidence that the legitimate, nondiscriminatory reasons offered by Defendant are a mere pretext

for discrimination.  <u>Id.</u> at 804–05.  The ultimate burden of persuasion, however, remains at all

times with Plaintiff.

Applying this legal standard, the Court finds that Plaintiff has established a prima facie

case of discrimination in violation of the ADA.  Plaintiff is deaf, which is a disability covered by

the statute.  Plaintiff is also a qualified individual, as demonstrated by the fact that she worked as

an AI paraprofessional for three years and received a favorable performance evaluation in her

final year in the position.  <u>See</u> Pl.'s Dep. at 74.  Plaintiff has presented sufficient evidence to

support the inference that she suffered an adverse employment action because of her disability.

Defendant appears to argue that because Plaintiff was an annually contracted employee, she

could not have suffered an adverse employment action when her contract was not renewed.  This

argument has already been rejected by the Third Circuit.  <u>See</u> <u>Wilkerson v. New Media Tech.</u>

<u>Charter Sch. Inc.</u>, 522 F.3d 315, 320 (3d Cir. 2008) (holding that "the failure to renew an

employment arrangement, whether at-will or for a limited period of time, is an employment

---

[2] Though the Court will address Defendant's motion using the <u>McDonnell-Douglas</u> burden-shifting framework, it is
not clear whether this is even necessary.  The McDonnell Douglas framework "was created because only rarely will
a plaintiff have direct evidence of discrimination.  Gone are the days (if, indeed, they ever existed) when an
employer would admit to firing an employee because she is a woman, over forty years of age, disabled, or a member
of a certain race or religion."  <u>Geraci v. Moody-Tottrup, Int'l, Inc.</u>, 82 F.3d 578, 581 (3d Cir. 1996).  Here,
Defendant admits that Plaintiff was not re-hired because of her disability and its incompatibility with the new model
for the AI program.  Instead of disputing the relevance of Plaintiff's disability, Defendant argues that because
Plaintiff was only under contract for one year, her job did not exist the following school year.  Nevertheless, the
Court will employ the familiar <u>McDonnell-Douglas</u> analysis in denying this portion of Defendant's motion.

action.").  Therefore, Plaintiff has sufficiently established a prima facie case of discrimination in violation of the ADA.

In their motion for summary judgment, Defendant further challenges Plaintiff's prima facie case by arguing that Plaintiff cannot satisfy the fourth prong of the <u>McDonnell-Douglas</u> test.  Defendant contends that the school "did not seek another to perform the same work that Plaintiff had been doing during the 2006-2007 school year because the position of AI aide was eliminated," thus invalidating any potential inference of discrimination.  Def.'s Mot. Summ. J. at 5.  This argument fails for several reasons.  First, although Defendant now appears to categorize Plaintiff's position in the AI program as a 1:1 aide, [3] in the e-mail from Michael Lee responding to Plaintiff's inquiry, Lee explicitly refers to the position as a "classroom para" position. [4]  Given this distinction, there is a genuine dispute as to whether Plaintiff's position was actually eliminated or whether Plaintiff was simply no longer a "good fit" for the position she formerly held.  More importantly, however, this element is not necessary for Plaintiff to establish a prima facie case of discrimination under these circumstances. [5]  Plaintiff need only demonstrate that she is a qualified individual with a disability who suffered an adverse employment action because of that disability.

---

[3] Defendant states that "Plaintiff was ultimately transferred back to the Middle School during the 2007-2008 school year as an aide for a deaf child but that child transferred out of Moorestown, thus the position was no longer available."  Def.'s Reply at 9.  To support this argument, Defendant references the statement of John Bach, Superintendent for the Moorestown Township Board of Education, in which Bach explains Defendant's decision not to hire Plaintiff for the 2008/2009 school year.  Nothing in Bach's brief statement explains Defendant's decision not to renew Plaintiff's contract following the 2006/2007 school year.

[4] The Court also notes that while Defendant characterizes Plaintiff's position as an annual position that needed to be applied for each year, Plaintiff contends that regardless of the contractual language, as general practice AI paraprofessionals were re-hired annually.  Pl.'s Dep. at 137.

[5] Defendant cites the four-prong prima facie case detailed in <u>McDonnell-Douglas</u>, which requires the plaintiff to demonstrate that the defendant sought "another" to perform the same work .  <u>See</u> <u>McDonnell-Douglas</u>, 411 U.S. at 802.  In this instance, however, the <u>McDonnell-Douglas</u> decision is applicable for its basic allocation of burdens and order of presentation of proof, not because the claims are identical.  The Supreme Court heeded that one prima facie standard cannot apply "in every respect to differing factual situations."  <u>McDonnell Douglas</u>, 411 U.S. at 802 n. 13.

Defendant also repeatedly maintains that Plaintiff had the opportunity to apply to the two available AI positions, but chose not to.  Defendant relies on this fact to argue that Plaintiff may not claim that she was discriminated against when she was not re-hired for the 2007/2008 school year.  This argument is somewhat perplexing, given that Plaintiff inquired about both positions.  Plaintiff e-mailed her supervisor explaining that she saw two available positions for the AI program and stated that "if there is a position I would rather be where I was last year.  Please let me know what can be done."  Pl.'s Opp'n, Ex. D.  In response, her supervisor told her: "We are using a model of pairing one hearing paraprofessional and one signing-model paraprofessional to work within the classroom.  This setting was not a good fit for you."  Id.  This evidence conflicts with Defendant's proffered argument that Plaintiff cannot claim discrimination for not receiving positions she never applied for.

Plaintiff has clearly established a prima facie case of discrimination in violation of the ADA based on Defendant's failure to re-hire her following the 2006/2007 school year.  Defendant has not offered any legitimate non-discriminatory reason for the decision.  Therefore, Defendant's motion is denied on this ground.

    2.  *Failure to Hire for 2008/2009 School Year*

Plaintiff also asserts an ADA claim based on Defendant's decision not to hire her for the 2008/2009 school year.  In order to establish a prima facie case under the ADA for failure to hire, Plaintiff must show that (1) she belongs to a protected category; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open and the employer continued to seek applicants. Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). As an alternative to the fourth element, "plaintiff could also show that the position was filled

with a person not belonging to the protected category." (internal citations omitted) Id. at 951;
Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 939 (3d Cir. 1997).

Defendant does not appear to dispute, at least for the purposes of this motion, that
Plaintiff fulfills the first three elements.  Defendant challenges her ability to satisfy the fourth
element, however, given that the woman who was hired, M.H., was also deaf.  In opposition,
Plaintiff argues that M.H., "although hearing impaired, is able to communicate as a hearing
person." Pl.'s Opp'n at 13.  Thus, unlike Plaintiff who is "profoundly deaf and communicates
primarily in American Sign Language," M.H. is only latently deaf and wears a cochlear implant.
Id.  Defendant counters that Plaintiff's "personal views about the degree of M.H.'s deafness are
irrelevant" and that as a deaf individual M.H. also belongs to the protected category.  Def.'s Mot.
Summ. J. at 10.

The Court finds that Plaintiff has established a sufficient prima facie case for this claim
as well.  Although Plaintiff's claim does not fit neatly into the aforementioned paradigm, the
elements of a prima facie case "must not be applied woodenly, but must rather be tailored
flexibly to fit circumstances of each type of illegal discrimination."  Geraci, 82 F.3d at 581.
While Defendant classifies M.H. as belonging to the same protected class as Plaintiff, Plaintiff
challenges this categorization and draws arguably critical distinctions between their disabilities.
The resolution of this dispute requires a fact-based inquiry that would be inappropriate for the
Court to undertake at this stage of litigation.[6]

---

[6] The Court also notes that even if Plaintiff had not drawn distinctions between M.H.'s disability and her own, the
fact that M.H. is also deaf would not *per se* invalidate Plaintiff's claim.  Although prior precedent once suggested
that plaintiffs must prove that they were "ultimately replaced by a person sufficiently outside the protected class to
create an inference of discrimination," the Third Circuit has explicitly rejected this requirement.  See Pivirotto v.
Innovative Sys., Inc., 191 F.3d 344, 356 (3d Cir. 1999) (Requiring plaintiffs to show that a position was filled with
someone outside of the protected class would be "particularly inappropriate in the present context . . . in which the
classification of plaintiffs and their replacements is largely categorical . . . and not continuous (as with age).").

Plaintiff has produced enough evidence to establish an inference of discrimination. Defendant allegedly assured Plaintiff that she would be contacted if any paraprofessional positions became available.  Pl.'s Ex. K at 1.  Without notifying Plaintiff, Defendant posted the position in the AI program.  See Id.  Plaintiff saw the open position and applied, but alleges that the position was removed shortly thereafter.  Pl.'s Dep. at 133; Pl.'s Ex. K at 1.   Under Plaintiff's narrative, it was only after she applied again and probed further by sending an e-mail to the Personnel Administrator that she was offered an interview for the position.  See Pl.'s Ex. K.  Placed in the context of Defendant's earlier remarks about Plaintiff not being a "good fit" for the other AI position, Plaintiff has made a sufficient showing to withstand summary judgment on this aspect of her claim.

### 3.  NJLAD Claim

In addition to challenging Plaintiff's ADA-related claims, Defendant argues that Plaintiff's NJLAD claims are barred by the relevant statute of limitations.  The Court agrees and judgment will be entered in favor of Defendant on these claims.

Claims under the NJLAD are subject to a two-year statute of limitations. *Montells v. Haynes,* 133 N.J. 282, 627 A.2d 654, 655 (N.J.1993); *Wilson v. Wal-Mart Stores,* 158 N.J. 263, 272 n. 2 (N.J.1999).  Plaintiff argues that because she dually filed her claim with the New Jersey Division on Civil Rights ("DCR") and the Equal Economic Opportunity Commission ("EEOC"), the statute of limitations did not run until the EEOC issued the right to sue letter.  Similar arguments have been addressed by several district courts in this circuit and were consistently rejected.  See Wolf v. PRD Mgmt., Inc., CIV. 11-2736 RMB JS, 2012 WL 1044504 (D.N.J. Mar. 27, 2012) reconsideration denied, CIV. 11-2736 RMB JS, 2012 WL 1623849 (D.N.J. May 8, 2012) (even if plaintiff had filed claim with both the EEOC and DCR, such dual filing would not

toll the statute of limitations for the NJLAD claim); <u>Cox v. Scholastic Book Fairs</u>, CIV. 05-4190, 2006 WL 1228615 (D.N.J. May 5, 2006) (plaintiff's filing of NJLAD retaliation claim with the DCR did not toll statute of limitations); <u>Sylvester v. Unisys Corp.</u>, CIV. A. 97-7488, 1999 WL 167725 (E.D. Pa. Mar. 25, 1999) (plaintiff's dual filing with the EEOC and DCR did not toll statute of limitations for NJLAD claim). The Court finds no reason to deviate from prior precedent in this case.

Accordingly, Plaintiff's NJLAD claim is barred by the applicable statute of limitations and Defendant is entitled to summary judgment in part.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  An accompanying Order shall issue today.


Dated:   3/13/13                                   /s/ Robert B. Kugler
                                                   ROBERT B. KUGLER
                                                   United States District Judge